IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| JACKIE PANARO and MATTHEW ROBBIN, | ) ) ) |
| Plaintiffs, | ) Case No. ) ) |
| v. | ) ) |
| UNITED AIRLINES, INC. | ) ) |
| Defendant. | ) ) |

**DEFENDANT UNITED AIRLINES, INC.'S NOTICE OF REMOVAL**

Defendant United Airlines, Inc. ("United" or "Defendant") hereby removes this action to this Court pursuant to 28 U.S.C. § 1441 and § 1446 on the grounds that this Court has jurisdiction of the action pursuant to 28 U.S.C. § 1332. In support hereof, Defendant states as follows:

**I.  SERVICE AND PLEADINGS FILED IN STATE COURT.**

1. On September 27, 2023, Jackie Panaro and Matthew Robbin ("Plaintiffs") filed a Complaint, styled *Jackie Panaro and Matthew Robbin v. United Airlines, Inc.,* Case No. 2023-CV-154, in the Circuit Court of Franklin County, Tennessee for the Twelfth Judicial District (hereinafter referred to as the "State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. In the Complaint, Plaintiffs allege that they were employed by Defendant, specifically that Defendant employed Ms. Panaro as a flight attendant and Mr. Robbin as a pilot. (Complaint ¶¶ 6-7.) Plaintiffs further allege that after Defendant approved their requests for religious accommodation related to Defendant's COVID-19 vaccination policy, Defendant placed them both on an unpaid leave of absence and constructively terminated them. (*See*, *e.g.*, Complaint

¶¶ 3, 24, 26, 28, 34, 37, 41.) Plaintiffs bring claims pursuant to Tenn. Code Ann. §§ 14-1-101 *et seq.* and for assault under Tennessee common law.

3. On October 6, 2023, Defendant was served with a copy of the Complaint in the State Court Action, as well as a Summons.

4. Pursuant to 28 U.S.C. § 1446(a), copies of the Summons and Complaint Defendant received are being filed contemporaneously herewith and comprise all process, pleadings and orders served upon Defendant or filed or received in this action by Defendant. *See* **Exhibit B**.

II. **BASIS FOR REMOVAL AND VENUE.**

5. Defendant removes this case to this Court on the basis of diversity under 28 U.S.C. § 1332.

6. A district court has original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a).

7. As shown below, this is a civil action in which Plaintiffs are residents of Tennessee and Defendant is not, and in which the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and it may be removed to this Court pursuant to 28 U.S.C. §1441.

9. Venue of this action, for removal purposes only, lies in the United States District Court for the Eastern District of Tennessee pursuant to 28 U.S.C. § 1441, *et seq.* and 1391(a) because Plaintiffs' State Court Action was filed in this district and Plaintiffs allege that "illegal activity" took place in this district, which Defendant denies.

10. By removing this action, Defendant does not waive any defenses or objections it may have.

**III.     DIVERSITY OF CITIZENSHIP EXISTS.**

11.     Upon information and belief, Plaintiffs are residents of the State of Tennessee. *See* Complaint at ¶¶ 6–7.

12.     A corporation is a citizen of every state in which it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). With respect to ascertaining a corporation's principal place of business for purposes of diversity jurisdiction, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010).

13.     Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

14.     Defendant is incorporated in Delaware. *See* Declaration of Dorota Karpierz, **Exhibit C**.

15.     As Plaintiffs allege, Defendant is headquartered in Chicago, Illinois. (Complaint ¶ 8.) At all relevant times, Defendant's principal place of business has been located in Chicago, Illinois. *See* Declaration of Dorota Karpierz, **Exhibit C**.

16.     Accordingly, Defendant is a citizen of Illinois.

17.     There is, therefore, complete diversity of citizenship between Plaintiffs (citizens of Tennessee) and Defendant (a citizen of Illinois).

## IV. THE AMOUNT IN CONTROVERSY EXCEEDS THE STATUTORY THRESHOLD.

18.  Although Defendant denies the allegations in the Complaint, Plaintiffs' Prayer for Relief includes a request for "[a]n order that Plaintiffs be compensated, to the extent allowable, for their monetary damages" and an order that Defendant pay the costs associated with bringing this lawsuit, including reasonable attorneys' fees and costs. (Complaint at p. 9.)

19.  While Plaintiffs do not specify the exact amount of monetary damages that they seek, Defendant can show, by a preponderance of the evidence, that the amount-in-controversy exceeds the $75,000 statutory threshold. *See Naji v. Lincoln*, 665 Fed. Appx. 397, 400 (6th Cir. 2016) ("[R]emoval of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).").

20.  The amount in controversy is determined by considering the judgment that would be entered if the Plaintiffs prevailed on the merits of their case as it stands at the time of removal, regardless of the Plaintiffs' likelihood of success. *See Smith v. Nationwide Prop.*, 505 F.3d 401, 407 (6th Cir. 2007) (quoting *Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro*, 129 Fed.Appx. 194, 196 (6th Cir. 2005)). Additionally, "where there is more than one plaintiff, their damages cannot be combined to meet the amount-in-controversy requirement." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 823 (6th Cir. 2006), abrogated on other grounds by *Hertz*, 559 U.S. at 77.

21.  Notably, Plaintiff Robbin's alleged backpay damages alone total more than $75,000.

22. Plaintiff Robbin claims he was placed on an unpaid leave of absence for "several months" beginning in November 2021, "during which time he was denied all pay and benefits." (Complaint at ¶¶ 41-42.)

23. Defendant hired Plaintiff Robbin on or about March 6, 2018. On November 12, 2021, Plaintiff Robbin began an unpaid personal leave of absence. He returned from leave on June 6, 2022, and he remains employed. *See* Decl. of Dorota Karpierz, **Exhibit C**. As reflected on his 2021 Form W-2, Plaintiff Robbin was paid $139,237.71 in wages, tips and other compensation during 2021 (approximately $13,388.24/month over 10.4 months). *See id*.

24. Accordingly, excluding any benefits that Plaintiff Robbin would have received if not on an unpaid leave, his estimated back wages from November 12, 2021 through June 6, 2022, based on his 2021 earnings, total approximately $91,040.03 ($13,388.24 x 6.8 months), which exceeds the jurisdictional requirement.

25. Plaintiff Panaro claims that beginning on November 17, 2021, United placed her on an unpaid leave of absence for six months, "during which time she was denied all pay and benefits." (Complaint at ¶¶ 28-29.)

26. Defendant hired Plaintiff Panaro on or about May 31, 1992. On November 17, 2021, Plaintiff Panaro began an unpaid personal leave of absence. She returned from leave on March 28, 2022. On August 3, 2022, her employment ended. *See* Declaration of Dorota Karpierz, **Exhibit C**. As reflected on her 2021 Form W-2, Plaintiff Panaro was paid $66,752.14 in wages, tips and other compensation during 2021 (approximately $6,357.35/month over 10.5 months). *See id*.

5

27. As such, excluding any benefits that Plaintiff Panaro would have received if not on an unpaid leave, her estimated back wages from November 17, 2021 through March 28, 2022, based on her 2021 earnings, total approximately $27,972.34 ($6,357.35 x 4.4 months).

28. Plaintiffs both bring claims for assault, requesting damages for "fear, anxiety, [and] fright[.]" (Complaint at ¶¶ 50–57). Under Tennessee law, such damages may be recoverable as compensatory damages, and punitive damages are also permitted. *Pease v. Alford Photo Industries, Inc.*, 667 F. Supp. 1188, 1203 (W.D. Tenn. 1987) (citing *Sullivan v. Morrow*, 504 S.W.2d 767 (Tenn. App. 1973)). Both compensatory and punitive damages for assault may be considered in calculating the amount in controversy. *Moulds v. Bank of New York Mellon*, No. 1:11-CV-200, 2011 WL 4344439, at *4 (E.D. Tenn. Sept. 14, 2011) (citing *Crosby v. Am. Online, Inc.*, 967 F.Supp. 257, 261 (N.D. Ohio 1997)). Tennessee courts have awarded a range of damages for assault claims, such as $20,000.00. *See Perkins v. Harris*, No. 17C0556, 2018 WL 5912845, at *4 (Tenn. Cir. Ct. May 9, 2018) (awarding $10,000.00 in compensatory damages and $10,000.00 in punitive damages against the defendant for throwing a book at the plaintiff while at work). The Court is permitted to consider "awards in similar lawsuits between other parties" when determining the amount in controversy to calculate the amount on controversy. *Graham v. Champion Intern. Corp.*, No. No. 2:97–CV–83, 1997 WL 33487768 at *3 (E.D. Tenn. May 16, 1997). Accordingly, for purposes of removal only, each Plaintiff could be entitled to $10,000.00 in compensatory damages and $10,000.00 in punitive damages for their assault claims.

29. It is also appropriate to include attorneys' fees when calculating the amount in controversy in this matter. "While attorneys fees are generally not included in the amount-in-controversy determination, courts may consider such requests if attorneys fees are available by statute." *Great Tenn. Pizza Co. v. BellSouth Telecomm., Inc.*, No. 3:10-CV-151, 2011 U.S. Dist.

LEXIS 46968, at *24 (E.D. Tenn. Apr. 29, 2011) (citing *Crosby v. Am. Online, Inc.*, 967 F. Supp. 257, 261 (N.D. Ohio 1997)). Plaintiffs request attorneys' fees pursuant to Tenn. Code Ann. § 14-6-103, for their claims based on alleged adverse actions after Defendant approved their requests for religious accommodation related to Defendant's COVID-19 vaccination policy. *See* Tenn. Code Ann. § 14-6-103 (authorizing a private right of action for compensatory damages, reasonable attorneys' fees, and injunctive relief). (Complaint First Cause of Action, ¶47, and p. 9.) While Defendant was unable to locate cases awarding attorneys' fees under Tenn. Code Ann. §§ 14-1-101 *et seq.*, and Plaintiffs do not raise a claim under Title VII of the Civil Rights Act of 1964, courts have awarded attorneys' fees in amounts which exceed the $75,000 in cases addressing claims concerning requests for religious accommodation under Title VII. *See, e.g.*, *Isabel v. City of Memphis*, 404 F.3d 404, 415–16 (6th Cir. 2005) (affirming the Western District of Tennessee's award of $184,461.00 in attorneys' fees and $36,786.00 in costs upon plaintiffs' successful Title VII claim at trial); *Aboubaker v. County of Washtenaw*, No. 2:11-cv-13001 (E.D. Mich. filed Mar. 18, 2015) (adopting the Magistrate Judge's findings and ordering defendant to pay plaintiff's attorneys' fees, totaling $112,114.24, related to successful Title VII religious discrimination claim).

30. Considering the cumulative value of each Plaintiff's potential claims for back pay, lost benefits, compensatory damages, punitive damages and attorneys' fees, Plaintiffs' claims, though vigorously contested by Defendant, undoubtedly both involve an amount in controversy in excess of $75,000.00, exclusive of interests and costs.

## V. TIMELINESS OF THE NOTICE OF REMOVAL.

31. This Notice of Removal has been timely filed pursuant to 28 U.S.C. § 1446(b). Defendant was served with a Summons and Complaint on October 6, 2023, and this Notice of Removal is filed within thirty (30) days.

## VI. NOTICE TO ALL PARTIES AND STATE COURT.

32. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal, as well as a Notice of Filing Notice of Removal, will be electronically mailed to counsel for Plaintiffs and will be filed with the Clerk of the Circuit Court of Franklin County, Tennessee. A copy of Defendant's Notice of Filing Notice of Removal is attached hereto as **Exhibit D**. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

WHEREFORE, Defendant removes this action to the United States District Court for the Eastern District of Tennessee.

Respectfully submitted,

*s/ Sean P. O'Brien*

Sean P. O'Brien, TN Bar No. 037608
LITTLER MENDELSON, P.C.
3725 Champion Hills Drive, Suite 3000
Memphis, TN 38125
Telephone: 901.795.6695
Facsimile: 901.881.4333
Email: sobrien@littler.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and exact copy of the foregoing was served via electronic mail, on this 6th day of November, 2023, to the following attorney(s) of record:

Robert E. Barnes
BARNES LAW
700 South Flower Street, Suite 1000
Los Angeles, CA 90017
Telephone: (310) 510-6211
Email: robertbarnes@barneslawllp.com

*Counsel for Plaintiffs*

                                                    *s/ Sean P. O'Brien*